## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PALM BEACH DIVISION

SHANKER RAJBHANDARI                                     Case No._____

    Plaintiff

-v-

US BANK NA AS LEGAL TITLE TRUSTEE
FOR TRUMAN 2012 SC2 TITLE TRUST,
LAW OFFICES OF GARY I. GASSEL,
FLORIDA DEFAULT LAW GROUP, P.L.,
WELLS FARGO BANK, N.A.,

    Defendants

_____/

## COMPLAINT FOR DAMAGES

COMES NOW SHANKER RAJBHANDARI (herein "PLAINTIFF"), in the above styled cause,

and hereby sues Defendants US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN

2012 SC2 TITLE TRUST, LAW OFFICES OF GARY I. GASSEL, FLORIDA DEFAULT

LAW GROUP, P.L., WELLS FARGO BANK, N.A., for violations of the Fair Debt Collection

Practices Act (FDCPA)15 U.S.C. § 1692, and the Florida Consumer Collection Practices Act

(FCCPA), FLA. STAT. §559(Part VI).

## PRELIMINARY STATEMENT

1.      This is an action for damages brought by Plaintiff against Defendants for

violations for violations of the Fair Debt Collection Practices Act (FDCPA)15 U.S.C. § 1692,

and the Florida Consumer Collection Practices Act (FCCPA), FLA. STAT. §559(Part VI) .

2.      Upon information and belief, Plaintiff contends that many of these practices are widespread for some or all of the Defendants.  Plaintiff intends to propound discovery to Defendants identifying these other individuals who have suffered similar violations.

3.      Plaintiff contends that the Defendants have violated such laws by depriving the Plaintiff of property and failing to yield to Federal and State law as more fully stated herein.

4.      With respect to the "Congressional findings and declaration of purpose" portion of the FDCPA, The United States Congress has declared at 15 U.S.C. § 1692:

*(a) Abusive practices*

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.  Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

*(b) Inadequacy of laws*

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

## INVESTIGATION BY THE DEPARTMENT OF JUSTICE

5.      With respect to the Federal Government, at least one of the Defendants has consented to the 49 State Attorney General $25 Billion Dollar Settlement (herein AG settlement).  Due to investigation by the Department of Justice (DOJ) February 9, 2012, the DOJ found numerous acts of unfair practices by the nations largest banks in state court foreclosures.

6.      This is the largest federal-state civil settlement ever obtained and is the result of extensive investigations by federal agencies, including the Department of Justice, HUD and the

HUD Office of the Inspector General (HUD-OIG), and state attorneys general and state banking regulators across the country.  The joint federal-state group entered into the agreement with the nation's five largest mortgage servicers: Bank of America Corporation, JPMorgan Chase & Co., Wells Fargo & Company, Citigroup Inc. and Ally Financial Inc. (formerly GMAC).  These banks consented to judgment of $25 billion.

      7.     The settlement is primarily created to commit $25 billion to resolve violations of state and federal laws by said banks.  "These violations include servicers' use of "robo-signed" affidavits in foreclosure proceedings; deceptive practices in the offering of loan modifications; failures to offer non-foreclosure alternatives before foreclosing on borrowers with federally insured mortgages; and filing improper documentation in federal bankruptcy court."

      8.     <u>The new servicing standards make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first.  In addition, banks will be restricted from foreclosing while the homeowner is being considered for a loan modification.</u>  The new standards also include procedures and timelines for reviewing loan modification applications and give homeowners the right to appeal denials.  Servicers will also be required to create a single point of contact for borrowers seeking information about their loans and maintain adequate staff to handle calls.

      9.     Investigations were conducted by the U.S. Trustee Program of the Department of Justice, HUD-OIG, HUD's FHA, state attorneys general offices and state banking regulators from throughout the country, the U.S. Attorney's Office for the Eastern District of New York, the U.S. Attorney's Office for the District of Colorado, the Justice Department's Civil Division, the U.S. Attorney's Office for the Western District of North Carolina, the U.S. Attorney's Office for the District of South Carolina, the U.S. Attorney's Office for the Southern District of New

York, SIGTARP and FHFA-OIG. The Department of Treasury, the Federal Trade Commission, the Consumer Financial Protection Bureau, the Justice Department's Civil Rights Division, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, the Office of the Comptroller of the Currency, the Department of Veterans Affairs and the U.S. Department of Agriculture made critical contributions.

> **Department of Justice**
> Office of Public Affairs
> FOR IMMEDIATE RELEASE
> Thursday, February 9, 2012
> Federal Government and State Attorneys General Reach $25 Billion Agreement with Five Largest Mortgage Servicers to Address Mortgage Loan Servicing and Foreclosure Abuses
> $25 Billion Agreement Provides Homeowner Relief & New Protections, Stops Abuses

## JURISDICTION AND VENUE

10.     Jurisdiction of this Court arises under 15 U.S.C. §1681p, Fla. Stat. §47.051, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

11.     Venue is proper pursuant to 28 U.S.C. §1391b and Fla. Stat. §559.77. Venue in this District is proper in that the Plaintiff resides here, the Defendants transact business here, and the conduct complained of occurred here.

12.     This is an action for damages which exceed $350,000.00.

## PARTIES

13.     Plaintiff, SHANKER RAJBHANDARI, is a natural person and is a resident of the State of Florida and is a "consumer" as that term is defined by 15 U.S.C. 1692a(3).

14.     US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST is an known entity that does business in Florida which regularly engages in debt

collection of promissory notes and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

15.     FLORIDA DEFAULT LAW GROUP ("DEFAULT GROUP") is a Law Office which regularly engages in debt collection of promissory notes and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

16.     WELLS FARGO BANK, N.A., SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHEAST, N.A., FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB is an known entity that does business in Florida and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

17.     LAW OFFICES OF GARY I. GASSEL is a Law Office which regularly engages in debt collection of notes and registered in the state of Florida and is a "debt collector" as that term is defined by 15 U.S.C. 1692a(6).

## FACTUAL ALLEGATIONS

18.     On or about February 11, 2010 WACHOVIA MORTGAGE CORPORATION, through the law offices of FLORIDA DEFAULT LAW GROUP, the Plaintiff filed a foreclosure law suit by Defendants for, among other things the enforcement of a promissory note (EXHIBIT "A" herein "complaint).

19.     The Plaintiff was given 20 days to respond (Exhibit "B" herein initial summons) overshadowing the Plaintiff's 30 days to dispute the debt.

20.     On or about March 22, 2011, the Defendant's applied, and were granted, a substitution of Party Plaintiff.  WACHOVIA MORTGAGE CORPORATION and WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK

SOUTHEAST, N.A., FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB claimed to be the "real party in interest" (Exhibit "C").  This case was dismissed (Exhibit "D")

21.     On or about April 5, 2013 US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, through the law offices of LAW OFFICES OF GARY I. GASSEL, P.A., the Plaintiff filed a foreclosure law suit by Defendants for, among other things the enforcement of a promissory note (Exhibit "E" herein "2nd complaint").

22.     In the complaint, in paragraph 2 of the Amended Complaint, the Defendants claimed:

> **Accompanying said Purchase Mortgage was a Promissory Note securing payment thereof which was executed and delieverd by the Defendant's SHANKER RAJBHANDARI..."**

23.     The collection activities of the Defendants involves an financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

24.     The Defendant LAW OFFICES OF GARY I. GASSEL, P.A., admits on the last page of their amended complaint that they are debt collectors and state:

> **"NOTE:  THIS LAW FIRM IS DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

25.     The FDCPA prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

26.     The foreclosure complaint alleged that the Plaintiff herein owed money for a consumer debt to US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST.

27.     Plaintiff does not have a contract with US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST.

28.     The note, the subject of the debt collection action, was made and executed in favor of another party.  Sometime thereafter, the debt was consigned, placed or otherwise transferred to Defendant(s) for collection from the Plaintiff without proper notice to the Plaintiff.

29.     Plaintiff has no contractual obligation to pay Defendants.

30.     Defendants' US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST and FLORIDA DEFAULT LAW G of LAW OFFICES OF GARY I. GASSEL, P.A., failed to attach a contract between the Plaintiff and the Defendants or any evidence that Plaintiff ever had an account with US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST and of LAW OFFICES OF GARY I. GASSEL, P.A.

31.     July 26, 2010, US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST and of LAW OFFICES OF GARY I. GASSEL, P.A., are trying to collect a debt, caused a purported assignment of mortgage prepared by AMY GEDEON, (assignment attached to Exhibit "E") the Plaintiff never received a copy of the endorsement to said party and a copy of the assignment as required by the mortgage contract section 15, 20, and 22 respectively, Florida Statutes § 559.715, and Obama Helping Families Save Their Homes Act of 2009 and Section 404 of the Truth In Lending Act (TILA).

32.     Said note and mortgage was purportedly endorsed and assigned by JOHN KENNERTY, Assistant Secretary and CHINA BROWN, Assistant Secretary for WACHOVIA MORTGAGE CORPORATION to US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST.  The assignment of debt was prepared by AMY GEDEON

of FLORIDA DEFAULT LAW GROUP and did not include an allonge to the original note showing a complete chain of title.

33.     JOHN KENNERTY and CHINA BROWN are known robo-signors, or debt collectors having no firsthand knowledge of facts in a collection action and signing affidavits and making averments to facts they have no knowledge of, under penalties of perjury.

34.     The National Housing Act, 12 U.S.C. 1701x(c)(5) required the Defendants to offer foreclosure counseling and information thereof to the Plaintiff as a condition precedent to foreclosure.  The Defendants failed to do so.

35.     Plaintiff had a right to receive foreclosure prevention loan servicing from Defendant Trust before the commencement, or initiation of this foreclosure action.

36.     Plaintiff is in doubt regarding Plaintiff's rights and status as a borrower under the *National Housing Act*, and also under the Pooling and Servicing or trust agreement that controls and applies to the subject note and mortgage.

37.     Plaintiff was denied and deprived by Plaintiff of rights to access the required troubled note mortgage loan servicing imposed on Plaintiff, and applicable to the subject note and mortgage loan by the *National Housing Act*, and also under the Pooling and Servicing or trust agreement that controls and applies to the subject mortgage.

38.     Plaintiff was subjected to foreclosure action, being forced to defend the same, and being charged court cost, related fees, and attorney fees without compliance with *National Housing Act.*

39.     Plaintiff contends that fees as illegally being enforced upon the Plaintiff in violation of state and federal laws.

40.     Plaintiff had a right to access the foreclosure prevention servicing prescribed by the *National Housing Act*, and additional counseling under the Pooling and Servicing or trust agreement that controls and applies to the subject note and mortgage.

41.     These wrongful and predatory practices are widespread by the Defendant's, and or through Defendant's agents, employees or predecessor in interest and said acts were intentional and deceptive.

42.     Defendants' asserted a right which it lacks, to wit, the right to enforce a debt.

43.     Defendant US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, through the law offices of FLORIDA DEFAULT LAW GROUP is in violation of Florida Statutes 559.715, which are a condition precedent and applies to those entities receiving assignments of consumer debts and, having failed to comply by providing notice to Plaintiff within 30 days after assignment, Defendants' were precluded as a matter of law from bringing the action in any court of Florida.

44.     There being no assignment to the TRUMAN 2012 SC2 TITLE TRUST proceeding the assignment from WELLS FARGO BANK N.A. SUCCESSOR BY MERGER TO WELLS FARGO HOME MORTGAGE, INC, the Trust here is acting outside its' right under the pooling and servicing agreement and ultra virus.

45.     The trust never received the note as required under the Pooling and Servicing agreement of the Trust therefore the Trust had no right to initiate foreclosure proceedings.

46.     On the face of the complaint filed and the assignment on record, the "least sophisticated consumer" would be confused and would deem the actions of US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, TRUMAN 2012 SC2 TITLE TRUST, WACHOVIA MORTGAGE CORPORATION AND WELLS FARGO BANK,

N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHEAST, N.A.,

FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB and FLORIDA DEFAULT LAW

GROUP unfair and deceptive.

47.      A trust is required to have four true sales to maintain a tax free status.  Here there

at least four missing assignments and the assignment that is filed is outside the timelines allowed

under IRC 860, exposing the trust to 100% taxable gain.  Here the trust is acting ultra virus

outside the limited scope of its Pooling and Servicing Agreement.

48.      Defendant US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012

SC2 TITLE TRUST is believed to be a New York Trust not registered to do business in the state

of Florida.  New York State Trust law requires active registration in order for a plaintiff to take

legal action. In Florida an unregistered corporation cannot foreclose, and cannot enforce and

collect a debt. With some exemptions, the state act (specifically, Fla. Stat. § 559.555) requires

collection agencies engaging in business within the state of Florida to register with the Florida

Office of Financial Regulation. To register, they must pay a $200.00 fee and provide certain

information.  The Trust is not properly registered with the state.

**Title XXXIII Chapter 559.55**

**(1)   "Debt" or "consumer debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.**

**(3)   "Creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but does not include any person to the extent that they receive an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.**

(4)   "Office" means the Office of Financial Regulation of the Financial Services Commission.

(6)   "Debt collector" means any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. The term "debt collector" includes any creditor who, in the process of collecting her or his own debts, uses any name other than her or his own which would indicate that a third person is collecting or attempting to collect such debts. The term does not include:

> (a)   Any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
> (b)   Any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector for persons to whom it is so related or affiliated and if the principal business of such persons is not the collection of debts;
> (f)   Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent that such activity is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; concerns a debt which was originated by such person; concerns a debt which was not in default at the time it was obtained by such person; or concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(8)   "Out-of-state consumer debt collector" means any person whose business activities in this state involve both collecting or attempting to collect consumer debt from debtors located in this state by means of interstate communication originating from outside this state and soliciting consumer debt accounts for collection from creditors who have a business presence in this state. For purposes of this subsection, a creditor has a business presence in this state if either the creditor or an affiliate or subsidiary of the creditor has an office in this state.

49.     Florida Uniform Commercial Code Article 3 requires that a holder in due course

must take an instrument for value in good faith without notice that the instrument is overdue

dishonored or has an uncured default without notice that the instrument contained unauthorized signature or has been altered. The allegations made by the Defendants' are not at harmony with the Uniform Commercial Code in their state court action.

50.    Florida Statute §201.08 does not allow the enforcement of a note when a documentary stamp tax has not been paid. Here there is no proof of a sale of the Plaintiffs' note for valuable consideration to wit:

> **Florida Statue §201.08 Tax on Promissory for non-negotiable notes, written obligations to pay money, or assignments of wages or other compensations; exception.-**
> **(1)**
>> **The mortgage, trust deed, or other instrument shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made there under has been paid.**

51.    Here the Defendants failed to conform with Florida Statute and the Uniform Commercial Code. There is no valuable consideration. Under IRC code 860(g), in order for the Trust to maintain its' tax free and bankruptcy remote status the Trust must be four transactions removed from the original tender of the note. That was not the case here. The four assignments were not recorded within the 90 day period required for the deposit of the Plaintiffs' note Pursuant to New York Trust law and IRC code.

52.    In violation of New York Trust law, Florida UCC and IRC 860 Defendants' US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST caused the filing of an assignment of mortgage on the public record. Pursuant to New York Trust law and IRC 860 Defendant Trust had 90 days to deposit and assign said mortgage to maintain its tax free status.

53.     There is no proof of valuable consideration and legal transfer of beneficial ownership in harmony with the Florida Uniform Commercial Code (UCC) consistent with Article 3. There is no perfection of the Plaintiff's security interest under revised Article 9 of the UCC. The Transaction as stated more fully herein is not complainant with UCC Articles 3,4 and 9.

54.     Here, the interloper Defendant US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST failed to satisfy the requirements of UCC section 3-302.

55.     A holder in due course must take the instrument for value, in good faith, without notice that the instrument is overdue, dishonored or has an uncured default, without notice that the instrument contains unauthorized signatures or has been altered, and without notice that any party has a claim or defense in recoupment. Here the Plaintiff is entitled to recoupment.

56.     Pursuant to the UCC the Defendants' US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST are not holders in due course. It is unclear when Defendant WACHOVIA MORTGAGE CORPORATION AND WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER TO WELLS FARGO BANK SOUTHEAST, N.A., FORMERLY KNOWN AS WACHOVIA MORTGAGE, FSB took possession of the subject note, since the Defendants failed to provide notice of assignment to the Plaintiff and a clear chain of endorsements.  Failure to communicate with the Plaintiff exactly how such a transaction is valid is deceptive, unfair and unconscionable. US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST are not holders in due course. It is unclear when Defendant WELLS FARGO BANK, N.A. yielded to conditions precedent to become proper

parties to enforce the debt and has failed to yield to all conditions precedent to bring claims against Plaintiff.

57.     Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, and or private concerns or affairs.

58.     These intrusions and invasions by Defendants occurred in a way that would be highly offensive to a reasonable person in that position, and the least sophisticated consumer.

59.     The loan servicing functions for the Defendant US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST are not holders in due course. WELLS FARGO BANK, N.A. are without written notice to Defendant as required by **RESPA** and ***F.S. Section 701.02***, and without an authorized, and or authenticated recorded assignment as required by ***F.S. Section 701.02,*** in order for a purported assignee to exercise a power of sale, judicial foreclosure.  Here it is frustrating, unclear and deceptive as to who has what role as servicer, holder, holder and due course and fictitious payee.

60.     The sale of Plaintiff note from an original lender into the secondary market was not disclosed to the Plaintiff.

61.     The Plaintiff's note was sold into the secondary mortgage market, without the Plaintiffs knowledge, in the manner alleged above.

62.     Florida Statute 701.02 states:

> **"...701.02Assignment not effectual against creditors unless recorded and indicated in title of document; applicability.—"**

63.     The Defendants failed to state other parties to the complaint and failed to indemnify the Plaintiff from additional claims from other possible parties including the actual holder of the note, including Mortgage Electronic Registration Systems (MERS).

64.    These practices of violating terms and conditions of notes and mortgages is wide spread by the Defendants and a national epidemic.  These actions were not disclosed to Defendant prior to her execution of the mortgage.  In fact the mortgage, state and federal law forbid said practices of the Defendants.  The written terms and conditions of the Plaintiff's mortgage were not clearly, conspicuously, and accurately set forth, and were stated in a manner so confusing as to be incomprehensible to a layperson pursuant to *RESPA* and *TILA* under *15 U.S.C. § 1605 (f), 1632, 1635 (a), 1638, 1638 (b), and 1639,* but not limited thereto.

65.    The Defendant Trusts' unknown Servicing Agent, further assigned, sold, or transferred the subject note and mortgage one or more times without written or constructive notice on the public record.  Plaintiff was not provided with any written notice of any such subsequent assignments, sales, or transfers, "not less than 15 days before the effective date of transfer of the servicing of the mortgage loan" pursuant to, and in violation of *12 U.S.C. 2605 (b) (1) (2) (a)* **of the** *Real Estate Settlement Procedures Act* (**RESPA**)**,** and *F.S. Section 701.02*.

66.    October 28, 2008, Florida Law Default Group was sanctioned with their client, "jointly and severally, to pay a monetary fine in the amount of $95,130.45", to pay for Negligent Practice and False Representations for filing false affidavits, by Judge John K. Olson, Judge US Bankruptcy Court Southern District of Florida Ft Lauderdale Division, Case No. 08-14257-BKR-JKO Doc #58.  In that order (attached as Exhibit "F"), attorney for Florida Law Default Group admitted to "less than 50" false stay relief affidavits were filed, and furthermore asserted that "at no point in State Court" would affidavits with egregious falsifications be filed because an "attorney would review the state of the case" prior to filing.

67.    Judge Olson's opinion offers a scathing condemnation of FDLG practice of "filing any old pleading without undertaking any investigation into its accuracy." Judge Olson

continues, "FLDG parties have engage in the systemic process of churning out unrefined and unexamined form pleadings, instead of producing and filing carefully considered legal papers. This has resulted in an abuse of the system and sanctions to deter continued recklessness are warranted." Revealed from even the briefest of investigations, Florida Law Default Group, under the supervision of Ronald Wolfe, continued these practices. Then Florida Default Law Group vice-president Ronald Wolfe, was at least partially responsible for the actions of the firm.

68.     April 29, 2010 the Florida Attorney General Economics Crime Division launched an Official Investigation into the practices of the Florida Default Law Group and Docx (some of Docx officer were investigated were filing fraudulent and misleading documentation and at least one officer was later indicted), LLC a/k/a Lender Processing Services investigated as Economics crime case L10-3-1095. The Economics Crime unit investigation report stated:

> **Allegation or issue being investigated**
>
> **Appears to be fabricating and/or presenting false and misleading documents in foreclosure cases. These documents have been presented in court before judges as actual assignments of mortgages and have later been shown to be legally inadequate and/or insufficient. Presenting faulty bank paperwork due to the mortgage crisis and thousands of foreclosures per month. This firm is one of the largest foreclosure firms in the State. This firm appears to be one of Docx, LLC a/k/a Lender Processing Services' clients, who this office is also investigating.**

69.     That investigation subsequently was the demise of the Florida Law Default Group and resulted in a more than $1.5 Million dollar fine.

70.     A substantiated criminal probe into the foreclosure fraud of the Florida Attorney General's Office and The Florida Default Law Group conspiracy continued. In foreclosure actions filed by WELLS FARGO BANK, NA, represented by Florida Default Law Group, P.L. and in other cases where Florida Default Law Group, P.L. represented clients in cases, Florida

Default Law Group, P.L. filed affidavits to establish that the attorneys' fees it was allegedly paid were reasonable. The affidavits purport to have been executed by Lisa Cullaro, the appointed expert on attorneys' fees. The notary who allegedly administered the expert's oath and vouched for her signature was Erin Cullaro, a former employee of Florida Default Law Group, P.L. and now an Assistant Attorney General in the Economic Crimes Division of the Office of the Attorney General.

71.     September 20, 2010 the Florida Default Law Group was involved in a scandal around robo-signing whereby Florida Default Law Group and GMAC submitted many invalid affidavits into court cases all over the state.  Again Florida Default Law Group under the supervision of Ronald Wolfe, were under investigation by the State of Florida, according to the attorney general's website.

72.     After subsequent investigations by state and federal agents of Florida Default Law Group, P.L. under the supervision of Ronal Wolfe, the Defendant FLORIDA DEFAULT LAW GROUP, P.L. changed their name to Ronald Wolfe & Associates.  The firm continues operation under the same supervision, same offices, same telephone numbers under watchful and diligent supervision of Ronald Wolfe and continues to engage in questionable foreclosure practices and suspicious document execution policies.

73.     The Florida Default Law Group, P.L. failed to exercise reasonable care in the filing and debt collection practices actions against Plaintiff, as evidenced more fully herein.

74.     The deceptive, unfair, deceptive and materially inconsistency of averments and statements of said Defendants in collection activities are wide spread and evident throughout thousands of cases in the state.

75.     On or about January 10, 2013, another assignment of mortgage, allegedly filed by
WELLS FARGO BANK, N.A., and signed by JULIANE CHRISTENSEN, also having failed to
timely file an assignment of mortgage as required by Florida law and engaging in deceptive
collection activity as against the Plaintiff.  JULIANE CHRISTENSEN knew or should have
known that the filing of said document was untimely, invalid and would be used in debt
collection activity, the approximate result that would be the loss of the Plaintiff's property.

76.     Again no copy of the assignment was ever sent to the Plaintiff as required by state
law, federal law, TILA and condition precedent to Constitutional Standing requirements to
foreclosure.  The least sophisticated consumer would believe that WELLS FARGO BANK, N.A.
and U.S. BANK, recipients of multiple lawsuits, investigations by the Department of Justice and
the subject of Cease and Desist orders, would in deed cease engaging in unlawful debt collection
practices, but that is not the case.

77.     The LAW OFFICES OF GARY I. GASSEL and GARY I. GASSEL ("GASSEL")
have failed to exercise reasonable care in the debt collection practices actions against Plaintiff, as
evidenced more fully herein.  GASSEL, failed in his supervisory role to exercise due care in the
collection of a debt, is unjustly enriched by said patterns and practices and now is bound by
vicarious liability for debt collection activity as more fully stated herein.  GASSEL knew, should
have known, and through his failure to exercise due care, should have reasonably concluded
through the defects on the face of documents and from reasonable review of the assignment of
mortgage, that this debt collection action was fraudulent and doomed, by in the pursuit of
process, violated state and federal collection laws as more fully stated herein.  LAW OFFICES
OF GARY I. GASSEL and GARY I. GASSEL engaged in the furtherance of false

representation, deceptive, unfair and unconscionable collection activity and to collect or attempt to collect a debt and is now vicariously liable.

78.     In there complaint and subsequent notices from the Defendants, the Defendants have stated in writing and over the telephone that the Defendants are all engaged in an attempt to collect a debt.

79.     Post-Complaint Filings in the instant case would also trigger required validation Notice.

80.     Congress created as an exception the words "formal pleading" in 15 U.S.C. 1692g(d).  Under the rules of civil procedure, pleadings are formal statements made by the parties of the operative, as distinguished from the evidential, facts upon which the claim or defense is based, and does not include filings such as motions, answers to interrogatories and requests for admissions.

81.     Rule 1.110(a)-(d), Florida Rules of Civil Procedure, specifies the permissible types of pleadings-the original claim, counterclaim, cross-claim, third party claim, answer and affirmative defenses.

82.     The Plaintiff has failed to receive a valid FDCPA Validation Notice providing complete and accurate disclosures mandated by the FDCPA including:

     (a)  the amount of the debt as required under 15 U.S.C. §1692g(a)(1);

     (b)  the name of the creditor to whom a debt was owed as required under 15 U.S.C.  §1692g(a)(2); and

(c) the rights of consumers with respect to disputing consumer debts as required under 15 U.S.C. §1692g(a)(3) insofar as required that the debt be disputed in writing, when there is no such requirement.

(d) the overshadowing of the civil complaint requiring response within 20 days when the 15 U.S.C. §1692g requires the consumer to receive 30 days.

(e) Invalid notices are no notices at all and confusing, deceptive, unfair and oppressive to the least sophisticated consumer.

(f) confusing notices would give the Defendants a litigation advantage in that the "least sophisticated" consumer would believe that if the debt were not disputed within the time period stipulated by a notice from the Defendants, then by default the debt would be legitimate which is not true.

83.    All subsequent filings in said case then became violations of the FDCPA and "communications" in the collection of a debt pursuant to the FDCPA.

84.    The Eleventh Circuit established the standard by which most violations of the FDCPA are analyzed, i.e., whether the communication by the debt collector would mislead the "least sophisticated consumer." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1172-75 (11th Cir. 1985).  Under the governing standard, a court need not determine whether the consumer were mislead or were confused by the notice, as the standard is whether the 'least sophisticated consumer' would have been mislead.  *Swanson v. Mid Am, Inc.,* 186 F.R.D. 665, 667 (M.D.Fla. 1999).

85.     The basic purpose of the least sophisticated consumer standard is to ensure that the FDCPA protects all consumers, "the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir. 1993). The actions of the Defendants as alleged in the Complaint herein must be evaluated from the standpoint of the least sophisticated consumer.

86.     As a result of these violations and acts of the Defendants', Plaintiff has been injured, suffered irreparable harm, aggravation, suffering and severe mental anguish loss of the consumers property.

87.     The Plaintiff has lost his property to summary judgment.

88.     As a result of such invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from each and every Defendant.

**COUNT I**
**VIOLATION OF FAIR DEBT COLLECTION**
**PRACTICES ACT (FDCPA), 15 U.S.C. §1692**
**BY DEFENDANTS  US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012**
**SC2 TITLE TRUST, LAW OFFICES OF GARY I. GASSEL, FLORIDA DEFAULT LAW**
**GROUP, P.L., WELLS FARGO BANK, N.A.,**

89.     Plaintiff alleges and incorporates the factual allegations as though fully set hereto.

90.     Plaintiff is a consumer within the meaning of the FDCPA, 15 U.S.C. §1692a(3).

91.     The Defendants are engaged in a collection of a "debt" as defined by § 1692a(5):

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

92.     Defendants  US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, LAW OFFICES OF GARY I. GASSEL, FLORIDA DEFAULT LAW

GROUP, P.L., WELLS FARGO BANK, N.A., are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a(6).

93.  All Defendants' violated the FDCPA. Defendant's violations include, but are not limited to, the following:

a.  Defendants' did violate § 1692 a(6) Definition of a Debt Collector as collectors, collection agencies, lawyers, forms writers because the Trust is not registered or Identified in the State of Florida.

b.  Defendants' did violate § 1692 d Any conduct the natural consequence of which is to harass, oppress, or abuse any person by depriving Plaintiff of money and property not entitled to under Florida law, whereas Plaintiff lost her home.

c.  Defendants' did violate§ 1692 e Any other false, deceptive, or misleading representation or means in connection with the debt collection by depriving defendant rights and property.

d.  Defendants' did violate§ 1692 e(2) Character, amount, or legal status of the alleged debt whereas stated here.

e.  Defendants' did violate § 1692 e(5) Threaten to take any action that cannot legally be taken or that is not intended to be taken whereas stated here.

f.  Defendants' did violate § 1692 e(10) Any false representation or deceptive means to collect a debt or obtain information about a consumer whereas stated here.

g.  Defendants' did violate § 1692 f Any unfair or unconscionable means to collect or attempt to collect the alleged debt whereas Plaintiff lost her home.

h.  Defendants' did violate§ 1692 f(1) Attempt to collect any amount not authorized by the agreement creating the debt or permitted by law whereas stated here.

i.  Defendants' did violate § 1692 f(6) Taken or threatened to unlawfully repossess or disable the consumer's property.

j.  Defendants' did violate § 1692 g(a)(3) Must state Right to Dispute within 30 Days.

94.  As a consequence of the acts of the defendants' Plaintiff SHANKER RAJBHANDARI is entitled to statutory and actual damages to be determined at trial.

**WHEREFORE,** Plaintiff demands judgment for damages against Defendants' US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, LAW OFFICES OF GARY I. GASSEL, FLORIDA DEFAULT LAW GROUP, P.L., WELLS FARGO BANK, N.A., for actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77 for actual and statutory damages. Plaintiff respectfully request that this Court award damages, and any other just and appropriate relief under the law, including but not limited to, attorneys' fees and costs.

**COUNT II**
**VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA), FLA. STAT. §559(Part VI) BY DEFENDANTS US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, LAW OFFICES OF GARY I. GASSEL, FLORIDA DEFAULT LAW GROUP, P.L., WELLS FARGO BANK, N.A.,**

95.  Plaintiff alleges and incorporates the information in the factual allegations.

96.     Plaintiff is a consumer within the meaning of §559.55(2).

97.     Defendants US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2012

SC2 TITLE TRUST, LAW OFFICES OF GARY I. GASSEL, FLORIDA DEFAULT LAW

GROUP, P.L., WELLS FARGO BANK, N.A., are debt collectors within the meaning of

§559.55(6).

98.     All Defendants violated §559.72(9) by claiming, attempting or threatening to

enforce a debt when such persons knew that the debt was not legitimate.

99.     As a consequence of the acts of the defendants' Plaintiff SHANKER

RAJBHANDARI is entitled to actual, punitive and statutory relief.

**WHEREFORE**, Plaintiff demands judgment for damages against US BANK NA AS

LEGAL TITLE TRUSTEE FOR TRUMAN 2012 SC2 TITLE TRUST, LAW OFFICES OF

GARY I. GASSEL, FLORIDA DEFAULT LAW GROUP, P.L., WELLS FARGO BANK, N.A.,

for actual damages, statutory damages, and punitive damages, attorney's fees and costs, pursuant

to Fla. Stat. §559.77.  Plaintiff respectfully request that this Court award damages, and any other

just and appropriate relief under the law, including but not limited to, attorneys' fees and costs.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 25th of November 2013

SHANKER RAJBHANDARI
102 Tuscany Drive
West Palm Beach, FL 33411